17 - 1 7 1 5  **JMC**

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Gary T. Smith, a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) being duly sworn, states:

### BACKGROUND

1.      I submit this affidavit to apply for a search and seizure warrant for the following cellular phones (hereinafter: the "**Subject Electronic Devices**":

- A black Apple I-Phone (ATF Property number 31)[1] (**Subject Electronic Device 1**)

- A black LG cellular telephone bearing serial number 607CYXM218178) (**Subject Electronic Device 2**);

- A black LG cellular telephone bearing MEID/DEC number 256691490201100243 (**Subject Electronic Device 3**);

- A black Samsung flip phone bearing serial number R21D66NG32K) (**Subject Electronic Device 4**);

- An Apple I-Phone (ATF Property number 38) (**Subject Electronic Device 5**);

- An AT&T ZTE cell phone model Z223 bearing IMEI number 868899020509234 and serial number 322560126592 (**Subject Electronic Device 6**);

- A black Apple I-Phone bearing IMEI number 990002287748766 (**Subject Electronic Device 7**);

- A cellular telephone bearing serial number 321760340112 (**Subject Electronic Device 8**);

- A LG cellular telephone bearing serial number 512CYQX386388 (**Subject Electronic**

---

[1] A few of the **Subject Electronic Devices** do not have visible identifying serial numbers or other identifying labels, and I have therefore identified them by their ATF property seizure designation which, in concert with the location of seizure, should specifically identify the device at issue.

17 - 1 7 1 5 **JMC**

**Device 9**);

- An Apple I-Phone S model A1688 serial number 579C-E2946A (**Subject Electronic Device 10**);

- An Apple I-Phone bearing IMEI number 352006067031808 (**Subject Electronic Device 11**);

- An Apple I-Phone bearing IMEI number 35202606359836 (**Subject Electronic Device 12**);

- An AT&T flip phone bearing serial number 325152534053) (**Subject Electronic Device 13**);

- A Nexus Tablet bearing PN number 60-OKMMB2001-(A34) (**Subject Electronic Device 14**);

- A black cellular telephone bearing serial number 3284513812FC (**Subject Electronic Device 15**);

- A black Samsung cellular telephone bearing R21CC4B9E7Z (**Subject Electronic Device 16**);

- A black Samsung Galaxy S2 bearing serial number R2GB854276J (**Subject Electronic Device 17**);

- A black cellular telephone bearing serial number 3284529930C9 (**Subject Electronic Device 18**);

- A black Apple I-Phone (ATF property number 61) (**Subject Electronic Device 19**);

- A pink Apple I-Phone (ATF property number 62) (**Subject Electronic Device 20**);

- A silver Apple I-Phone (IMEI 013884007360664) (**Subject Electronic Device 21**);

2

- A white Apple I-Phone bearing IMEI number 359300066793770 (**Subject Electronic Device 22**);

- A black Samsung flip phone bearing MEID HEX number A00000476862AE (**Subject Electronic Device 23**);

- A Samsung cellular phone model SM-S550TL bearing serial number 359578071726170 (**Subject Electronic Device 24**)

*See also* Attachment A.

The items to be searched are believed to contain and conceal items that constitute evidence of a drug trafficking conspiracy of violation of Title 21 United States Code Sections 841(a), 846. The phones are currently in the custody of the ATF.

2.      The applied for warrant would authorize the forensic examination of the **Subject Electronic Devices** for the purpose of identifying electronically stored data particularly described in Attachment B and using the protocols described in Attachment B by members of the ATF, or their authorized representatives, including but not limited to other law enforcement agents assisting in the above described investigation.

## AGENT BACKGROUND

3.      I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

4.      Your Affiant, Gary T. Smith, has been a sworn officer of the Baltimore Police Department since September 2001. Furthermore, your Affiant, since February 2010, has been

3

assigned as a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives and is now assigned to Group VI. Your Affiant successfully completed a six-month basic course of training that included classes pertaining to Controlled Dangerous Substances (CDS). Your Affiant has also attended more than five advanced investigative courses. Prior assignments include uniform patrol, District Operations Unit, and the Violent Crime Impact Team. Your Affiant has personally conducted and participated in numerous investigations involving criminal activity including but not limited to CDS, violent crime, and firearms violations. Your Affiant has participated in the arrest of numerous persons for CDS, violent crime, and/or firearms violations and has authored and/or executed numerous Search and Seizure Warrants relating to CDS, violent crime, and/or firearms violations.

5.    Through training and interviews of hundreds of persons arrested for CDS offenses, your Affiant is familiar with the actions, traits, habits, and terminology utilized by traffickers of CDS. Your Affiant has also participated in hundreds of surveillances of suspected drug traffickers

6.    This investigation is being conducted by the ATF, and the Baltimore Police Department (BPD). I have personally participated in this investigation and make this affidavit based upon my personal participation in this investigation and based on reports made by other law enforcement agents, as well as confidential informants discussed in more detail below. Except where otherwise noted, the information set forth in this affidavit has been provided to me by other law enforcement agents who have assisted in the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement was made by another law enforcement officer (any of whom may have had either direct or hearsay knowledge of that statement) to whom I or other law enforcement officers have spoken or whose reports I have

4

reviewed.  Such statements are reported in substance and in part, unless otherwise indicated.

Likewise, information resulting from surveillance sets forth either my personal observations or

information provided directly or indirectly through other law enforcement officers who conducted

such surveillance. Not all of the facts of the investigation known to me are contained herein, only

those necessary to establish probable cause for the stated offense.

7.      Based on my knowledge, training, and experience, I know that individuals involved

with drug trafficking frequently use cellular telephones, communication devices, and other

electronic media storage to further their illegal activities.  Based upon your affiant's knowledge,

training, and experience, and participation in this and other drug trafficking investigations, I know

the following:

a.      The fruits and instrumentalities of criminal activity are often concealed in

digital form.  Furthermore, digital camera technology is often used to capture images of tools and

instrumentalities of pending criminal activity.  Cell phones have both digital storage capacity and

digital camera capabilities;

b.      Cellular telephones are an indispensable tool of the drug trafficking trade.

Drug traffickers use cellular telephones, push-to-talk telephones, Short Message Service ("SMS"),

electronic-mail, and similar electronic means and/or devices, often under fictitious names or names

other than their own, in order to maintain contact with other conspirators.  In addition, drug

traffickers will often change their cellphones following the arrest of a member of their drug

trafficking organization (DTO), or at random times in order to frustrate law enforcement efforts;

c.      Drug traffickers often place nominal control and ownership of telephones

in names other that their own to avoid detection of those telephones by government agencies.  Even

5

though telephones are in the names of other people, drug traffickers retain actual ownership, control, and use of the telephone, exercising dominion and control over them;

d.    Drug traffickers frequently utilize cellular telephones, pagers and other electronic communications devices to facilitate illegal drug transactions. In investigations such as this, cellular telephones are direct evidence of the criminal conspiracy. A suspect's possession of a cellular telephone with a certain call number (or electronic serial number) identified during the investigation is evidence that that suspect is the user of the cellular telephone and constitutes evidence of the suspect's participation in the conspiracy. Likewise, documents referencing the possession or use of cellphones, such as bills, cellphone boxes, receipts for phones or payment, etc., are of evidential value insofar as their evidence of a suspect's possession of a particular phone. Moreover, the electronically stored information on these devices is of evidentiary value in identifying other members of the drug trafficking conspiracy and establishing the relationship between these individuals;

e.    Individuals involved in drug trafficking often use digital storage devices to maintain telephone number "contact lists" of individuals who are customers, suppliers, or co-conspirators and sometimes take photographs of themselves and/or co-conspirators;

f.    Individuals who possess or own handguns or other weapons frequently photograph themselves holding the handguns or other weapons;

g.    Individuals involved in drug trafficking often employ cellular telephones to arrange for the transaction of controlled substances;

h.    Individuals involved in drug trafficking often have photographs on their cellular telephones depicting controlled substances and the proceeds therefrom; and

6

17 - 1 7 1 5 JMC

i.       Cell phones often record the phone's historical location data.

## PROBABLE CAUSE

8.      The ATF is investigating a drug trafficking gang that was operating in the Waverly Way neighborhood of Baltimore, Maryland that has been responsible for many historical acts of violence and which—until their indictment—operated drug shops at various areas throughout the Waverly Way neighborhood.[2]   Based on physical surveillance, information gleaned from confidential sources, undercover controlled purchases, review of social media accounts, and review of phone records, there is evidence that the **Target Subjects** comprise a drug trafficking gang called the "Old York Money Gang" (abbreviated "OYMG").

9.      Based on the evidence, I believe OYMG is an armed and violent drug trafficking organization ("DTO"), that operated near the corner of Greenmount and Venable Street in Baltimore City, Maryland.  OYMG has sold heroin, crack cocaine, marijuana, and prescription pills to retail customers from an open-air style drug "shop."  Based on evidence gathered to date, including information provided by confidential sources, investigators believe that DTO members include the users of the **Subject Electronic Devices**—namely Terrell PLUMMER, Trevon BEASLEY, Tyrone JAMISON, Davin LAWSON, Calvin WATSON, Tyron BROWN, and Davonte RICH (herein the **Target Subjects**).

---

[2] Because this Affidavit is being submitted for the limited purpose of establishing probable cause for a search warrant, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause.  I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information contained in this Affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals.  All conversations and statements described in this Affidavit are related in substance and in part unless otherwise indicated.

## CONFIDENTIAL SOURCES

10.    Confidential Source #1, Confidential Source #2, and Confidential Source #3 grew up in the Waverly Way neighborhood and know the **Target Subjects** intimately through personal experiences and observations over the past several years.  Both CS1 and CS2 are cooperating with law enforcement in the hopes of obtaining leniency on pending criminal charges.  CS3 is cooperating out of concern for the community, and occasional financial compensation. CS1, CS2, and CS3 state that from the spring of 2014 until April 2017, the **Target Subjects** have been involved in an organization that distributes controlled substances throughout the Waverly Way neighborhood, most notably at or around the area of 35th Street and Old York Road, Greenmount and Venable Street, and other locations in the neighborhood.[3]

## CONTROLLED PURCHASES FROM SUBJECTS

11.    The ATF and BPD started conducting controlled purchases from the **Target Subjects** in October 2016.  Controlled purchases resumed January 2017.  It was not until late March and early April 2017 that a proactive investigation of the DTO resumed.  Accordingly, any gaps in the probable cause between October, January and April results only by virtue of the fact that law enforcement resources were only directed to the DTO during those periods.

**Terrell "Rell" PLUMMER**

12.    On March 23, 2017, the ATF conducted a controlled purchase of suspected crack-

---

[3] CS1, CS2, and CS3 base their knowledge from their own experiences either buying drugs from the **Target Subjects**, or their own observations of drug transactions in the neighborhood.  They claim that the **Target Subjects** coordinate their drug trafficking together—assigning different roles to different members of OYMG and otherwise assisting one another in the distribution of controlled substances.

cocaine from PLUMMER through the use of an ATF Confidential Informant ("CI") 7816. CI 7816 made a controlled purchase of suspected crack cocaine near the intersection of McKewin Avenue and Frisby Street. On March 29, 2017, ATF CI 7816 made a second controlled purchase of suspected crack-cocaine from PLUMMER near the intersection of McKewin and Frisby Street.

13.     In the second week of April, CS2 arranged to purchase narcotics from PLUMMER. When CS2 met PLUMMER around Greenmount and Venable Street, ATF investigators and CS2 observed hand-to-hand exchanges between PLUMMER and other customers that, based on my training and experience, involved exchanges of narcotics for U.S. currency.

### Trevon "Tre" BEASLEY

14.     On October 20, 2016, the ATF conducted a controlled purchase of suspected crack-cocaine from BEASLEY with the use of ATF CI 7816. On October 27, 2016 ATF CI 7816 made a controlled purchase of suspected crack-cocaine and suspected heroin from BEASLEY and LAWSON. On November 3, 2016, ATF CI 7816 made a controlled purchase of suspected crack-cocaine and suspected heroin from BEASLEY in exchange for $100.00 in ATF funds. On January 5, 2017, with the help of a Baltimore Police Department ("BPD") Under Cover ("UC") Squad, a BPD UC made a controlled purchase of suspected crack-cocaine and suspected heroin. All controlled purchases with BEASLEY occurred in and around the 3300 block of Greenmount Avenue.

15.     In the second week of April, ATF CI 7816 arranged for another purchase of controlled substance from BEASLEY while in the presence of WATSON, JAMISON, RICH, and others associated with this organization. BEASLEY told the CI that he had "boy [heroin] and girl [crack-cocaine]" and advised that "CHOPPER" (RICH) had the 'grass' [marijuana]." Later in

9

April, CS2 observed BEASLEY hand US currency to PLUMMER, which he received from an unidentified individual.  After, ATF CI 15175 watched PLUMMER conduct a hand-to-hand exchange of suspected crack cocaine with the unidentified individual.  Also present during the exchanges was JAMISON, WATSON, RICH and others associated with this organization.

**Davin "D" LAWSON**

16.     On October 27, 2016, ATF CI 7816 made a controlled purchase of both suspected crack-cocaine and suspected heroin from LAWSON and BEASLEY.  On January 2, 2017, a BPD UC made a controlled purchase of suspected crack cocaine from LAWSON.  On January 4, 2017, a BPD UC made a controlled purchase of suspected crack-cocaine from LAWSON.  On January 9, 2017, a BPD UC made controlled purchases of suspected crack cocaine from LAWSON.  All controlled purchases with LAWSON occurred in and around the 3300 to 3500 blocks of Greenmount Avenue.  During the course of this investigation, LAWSON contacted CI 7816 numerous times by way of cell phone regarding possible drug exchanges.  On April 12, 2017, LAWSON texted CI 7816 "Out early wit it. Hit me."  Based on their exclusive relationship of transacting narcotics, I believe that LAWSON was soliciting ("Hit me") CI 7816 to purchase more narcotics ("wit it.").  On April 13, 2017, a BPD UC attempted to contact LAWSON.  BROWN picked up the phone.  In the course of the ensuing narcotics transaction, BROWN stated that he "worked with D."

**Calvin "Monster" WATSON & Tyrone "Ty" JAMISON**

17.     On January 3, 2017, a BPD UC entered "Mama's Grocery" Store, located at 3322 GREENMOUNT AVENUE.   Inside, the BPD UC observed BEASLEY, WATSON and JAMISON.  The UC initiated conversation asking if there were any "Girls" (common term for

10

17-1715 JMC

crack-cocaine) and BEASLEY provided his cell phone number, then walked away. The BPD UC then ordered $40.00 worth of suspected crack cocaine from JAMISON. The UC then observed JAMISON walk to WATSON, who handed JAMISON suspected narcotics prior to JAMISON serving them to the UC.

18.     Investigators did not have occasion to purchase directly from JAMISON or WATSON between January 3, 2017 and April 25, 2017. Nevertheless, in addition to the evidence seized from their residences and vehicles indicating ongoing drug trafficking, the ATF surveilled the drug trafficking organization in the month of April and observed JAMISON and WATSON consistently in or around the DTO drug shops and, most importantly, present during narcotics transactions with fellow DTO members. For example, when BEASLEY solicited ATF CI 7816 to sell him/her heroin and crack-cocaine in the second week of April, he did so in the presence of WATSON and JAMISON. Also, when investigators observed PLUMMER and BEASLEY engaged in the apparent transaction of hand-to-hand narcotics exchanges, such exchanges were done in the presence of WATSON and JAMISON.

19.     I submit these events, in concert with the general surveillance and information from confidential sources that WATSON and JAMISON have long been part of the DTO, demonstrates that WATSON and JAMISON did not cease their participation in the drug trafficking conspiracy. Based on my training and experience, I know that drug trafficking is an ongoing activity and therefore the crimes at issue and the evidence thereof is not limited to the time of the UC buys in this case.

20.     Additionally on April 17, 2017, WATSON and BEASLEY and two other DTO members were arrested in Baltimore County for attempted burglary of an establishment. In a

11

search incident to arrest, officers recovered over $800.00 from WATSON despite that WATSON did not enter the building.   Based on surveillance, confidential sources, and training and experience, I believe this money was proceeds from drug trafficking.

**Tyron "Boobie" BROWN**

21.   On April 12, 2017, a BPD UC approached a black male later identified as BROWN. The UC made a controlled purchase of suspected crack cocaine from BROWN in the 400 block of Venable Avenue.   The 400 block of Venable Avenue intersects with the 3300 block of Greenmount Avenue and "Mama's Grocery" Store—one of the DTO drug shops.   On April 13, 2017, a BPD UC placed a telephone call to phone associated with LAWSON.   The UC was previously provided the phone number in a previous controlled purchase and advised that BROWN answered. BROWN served the UC suspected crack cocaine in exchange for BPD departmental funds.

**Devonte "Chopper" RICH**

22.   On January 30, 2017, RICH was observed in the 3300 block of Greenmount Avenue by BPD investigators.   The investigators observed RICH make a suspected drug transaction of narcotics with an unknown buyer.   RICH was stopped and found in possession of twenty four (24) clear ziplock bags containing suspected marijuana and four (4) zip lock bags containing suspected marijuana, totaling 17 grams of suspected marijuana.    Also recovered was $1,217.00 dollars. Based on training and experience, I believe that this large amount of U.S. currency represented proceeds of drug trafficking.

23.   Investigators have not purchased directly from RICH since January 30, 2017. However, in the second week of April, ATF CI 7816 had a conversation with BEASLEY while in the presence of WATSON, JAMISON, RICH, and others associated with this organization.

12

BEASLEY stated he had "boy [heroin] and girl [crack-cocaine]" and advised that "'CHOPPER' (RICH) had the 'grass' [marijuana]." This is consistent with the events of January 30, 2017, in which CHOPPER had been arrested for trafficking marihuana. Based on training and experience, I know that DTO's often assign different members to sell different types of drugs, and the evidence suggests that RICH is responsible for selling marihuana [grass].

24.    Additionally, as with WATSON and JAMISON, investigators surveilled the drug trafficking organization in the month of April and observed RICH consistently in or around the DTO drug shops and, most importantly, present during narcotics transactions with fellow DTO members. For example, when BEASLEY solicited ATF CI 7816 to sell him/her heroin and crack-cocaine in the second week of April, he did so in the presence of RICH, WATSON, and JAMISON. Also, when investigators observed PLUMMER and BEASLEY engaged in the apparent transaction of hand-to-hand narcotics exchanges, such exchanges were done in the presence of RICH, WATSON, and JAMISON.

25.    As with WATSON and JAMISON, RICH's continued presence in the DTO shops and with DTO members during transactions demonstrates his continued participation in the drug trafficking conspiracy. In addition to the evidence seized from his residence, confidential sources claim that RICH has been a member of the DTO continually since 2014. Based on my training and experience, I know that drug trafficking is an ongoing activity and therefore the crimes at issue and the evidence thereof is not limited to the time of the confirmed drug transactions in this case.

## SEARCH WARRANTS & SUBJECT ELECTRONIC DEVICES

26.    Based on the foregoing, on April 25, 2017, United States Magistrate Judge Stephanie A. Gallagher authorized warrants for the search of residences and vehicles of the **Target**

**17 - 1 7 1 5 JMC**

**Subjects.**  On April 26, 2017,[4] the ATF executed the warrants and recovered the **Subject Electronic Devices** pursuant to these warrants.

### PLUMMER (Subject Electronic Devices 1-2)

27.     A search of PLUMMER's residence (810 Exeter Hall Avenue) resulted in the seizure of a quantity of suspected narcotics and drug trafficking paraphernalia, as well as **Subject Electronic Devices 1-2** in PLUMMER's bedroom.  PLUMMER also told investigators the phones belonged to him.

### BEASLEY (Subject Electronic Devices 3-6)

28.     A search of BEASLEY's residence (4327 Roberton Avenue) resulted in the seizure of suspected narcotics and marihuana, U.S. currency, drug trafficking paraphernalia, and **Subject Electronic Devices 3-5** in BEASLEY's bedroom.  A separate search warrant of BEASLEY's vehicle (a 2015 Chrysler 200) resulted in the seizure of **Subject Electronic Device 6**.

### BROWN (Subject Electronic Devices 7-10)

29.     A search of BROWN's residence (3707 Greenmount Avenue) resulted in the seizure of **Subject Electronic Devices 7-9** from BROWN's bedroom.  On April 26, 2017, BROWN surrendered to the United States Marshal's Service and was in possession of **Subject Electronic Device 10**, which was taken into ATF custody.

### RICH (Subject Electronic Devices 11-14)

30.     A search of RICH's residence (1631 N. Aisquith Street) resulted in the seizure of a substantial quantity of suspected marihuana, drug trafficking paraphernalia, and **Subject**

---

[4] The search warrants for BEASLEY and WATSON's vehicle were obtained separately and executed at a subsequent date.

17-1715 JMC

**Electronic Devices 11-14** from RICH's bedroom.

### JAMISON (Subject Electronic Devices 15-21)

31.     A search of JAMISON's residence (3811 Ednor Road) resulted in the seizure of suspected narcotics, drug trafficking paraphernalia, U.S. currency, and **Subject Electronic Devices 15-19** from JAMISON's bedroom.   A search of JAMISON's vehicle (2005 Honda) resulted in the recovery of **Subject Electronic Devices 20-21**.

### LAWSON (Subject Electronic Devices 22-23)

32.     A search of LAWSON's residence (3514 Old York Road) resulted in the seizure of suspected narcotics, drug trafficking paraphernalia, and **Subject Electronic Devices 22-23** (which Lawson admitted to owning).

### WATSON (Subject Electronic Device 24)

33.     A search of WATSON's vehicle (a tan Pontiac Grand Prix assigned VIN# 1G2WK52J13F123254) resulted in the seizure of **Subject Electronic Device 24**.

### CONCLUSION

34.     Based on the foregoing, I submit there is probable cause that the **Target Subjects** owned, possessed, or used the **Subject Electronic Devices** during their commission of the **Target Offenses** (see below), and a search of those devices will reveal evidence of drug trafficking and a drug trafficking conspiracy, in violation of Title 21 U.S.C. §§ 841(a), 846.

35.     WHEREFORE, I respectfully request that the Court issue a warrant authorizing members of the ATF, or their authorized representatives, including but not limited to other law enforcement agents assisting in the above described investigation, to search the **Subject Electronic Devices**, as described in Attachment A, for the purpose of identifying electronically

17 - 1 7 1 5 JMC

stored data particularly described in Attachment B and using the protocols described in Attachment

B.

Gary T. Smith
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn to before me on _____ 6/15 _____ , 2017

The Honorable J. Mark Coulson
United States Magistrate Judge

16

**17 - 1 7 1 5 JMC**

## ATTACHMENT A

### Description of the Items to be Searched

- A black Apple I-Phone (ATF Property number 31) (**Subject Electronic Device 1**)

- A black LG cellular telephone bearing serial number 607CYXM218178) (**Subject Electronic Device 2**);

- A black LG cellular telephone bearing MEID/DEC number 256691490201100243 (**Subject Electronic Device 3**);

- A black Samsung flip phone bearing serial number R21D66NG32K) (**Subject Electronic Device 4**);

- An Apple I-Phone (ATF Property number 38) (**Subject Electronic Device 5**);

- An AT&T ZTE cell phone model Z223 bearing IMEI number 868899020509234 and serial number 322560126592 (**Subject Electronic Device 6**);

- A black Apple I-Phone bearing IMEI number 990002287748766 (**Subject Electronic Device 7**);

- A cellular telephone bearing serial number 321760340112 (**Subject Electronic Device 8**);

- A LG cellular telephone bearing serial number 512CYQX386388 (**Subject Electronic Device 9**);

- An Apple I-Phone S model A1688 serial number 579C-E2946A (**Subject Electronic Device 10**);

- An Apple I-Phone bearing IMEI number 352006067031808 (**Subject Electronic Device 11**);

- An Apple I-Phone bearing IMEI number 35202606359836 (**Subject Electronic Device**

12);

- An AT&T flip phone bearing serial number 325152534053) (**Subject Electronic Device 13**);

- A Nexus Tablet bearing PN number 60-OKMMB2001-(A34) (**Subject Electronic Device 14**);

- A black cellular telephone bearing serial number 3284513812FC (**Subject Electronic Device 15**);

- A black Samsung cellular telephone bearing R21CC4B9E7Z (**Subject Electronic Device 16**);

- A black Samsung Galaxy S2 bearing serial number R2GB854276J (**Subject Electronic Device 17**);

- A black cellular telephone bearing serial number 3284529930C9 (**Subject Electronic Device 18**);

- A black Apple I-Phone (ATF property number 61) (**Subject Electronic Device 19**);

- A pink Apple I-Phone (ATF property number 62) (**Subject Electronic Device 20**);

- A silver Apple I-Phone (IMEI 013884007360664) (**Subject Electronic Device 21**);

- A white Apple I-Phone bearing IMEI number 359300066793770 (**Subject Electronic Device 22**);

- A black Samsung flip phone bearing MEID HEX number A00000476862AE (**Subject Electronic Device 23**);

- A Samsung cellular phone model SM-S550TL bearing serial number 359578071726170 (**Subject Electronic Device 24**)

17 - 1 7 1 5  JMC

The devices will be charged and powered on.  The devices are in custody of the ATF and/or the Baltimore City Police Department.  The devices and all readable and searchable contents will be downloaded to a "CelleBrite" or "XRY" or similar device.  The contents downloaded on the "CelleBrite" or "XRY" or similar device will then be copied to a readable computer disc and reviewed by your affiant.  A search warrant return will be provided to the Court thereafter.

17 - 1 7 1 5 **JMC**

## ATTACHMENT B

### Search Protocols

This warrant authorizes the search and seizure of the following electronically stored information, contained within the items described in Attachment A:

a.  digital images;

b.  digital videos;

c.  records of incoming and outgoing voice communications;

d.  records of incoming and outgoing text messages;

e.  the content of incoming and outgoing text messages;

f.  voicemails;

g.  voice recordings;

h.  contact lists;

i.  social media applications and the content of such applications;

j.  communication applications and the content of such applications;

k.  the content of device back-up accounts;

l.  records of web browser activity, history, and usage; and

m.  location data

that are related to the investigation into a drug trafficking conspiracy as more fully described in the Affidavit.

Because of the possibility that the files examined pursuant to the warrant will include information that is beyond the scope of what the United States has demonstrated the existence probable cause to search for, the search shall be conducted in a manner that will minimize to the greatest extent possible the likelihood that files or other information for which there is not probable cause to search is not viewed.

While this protocol does not prescribe the specific search protocol to be used, it does contain limitations to what the government investigators may view during their search, and the

17 - 1 7 1 5 JMC

searching investigators shall be obligated to document the search methodology used in the event that there is a subsequent challenge to the search that was conducted, pursuant to the following protocol.

With respect to the search of any digitally/electronically stored information that is seized pursuant to this warrant, and described in Attachment A hereto, the search procedure shall include such reasonably available techniques designed to minimize the chance that the government investigators conducting the search will view information that is beyond the scope for which the probable cause exists.

The following list of techniques is a non-exclusive list which illustrates the types of search methodology that may avoid an overbroad search, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein:

    a.  Use of computer search methodology to conduct an examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether data falls within the items to be seized as set forth herein by specific date ranges, names of individuals, or organizations;

    b.  Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein;

    c.  Physical examination of the storage device, including digitally surveying various file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth herein; and

    d.  Opening or reading portions of files that are identified as a result of conducting digital search inquiries in order to determine their relevance.